**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MARK RANDALL BUNKER, | ) | NO. ED CV 18-283-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | **AND ORDER OF REMAND** |
| Commissioner for Operations, | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied, and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on February 6, 2018, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on March 10, 2018. Plaintiff filed a motion for summary judgment on August 13, 2018.

Defendant filed a motion for summary judgment on November 12, 2018. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed February 8, 2018.

**BACKGROUND**

Plaintiff, a former plumber, asserts disability since June 22, 2013, based on, inter alia, a back injury, dizziness, diabetes, weight problems and fractured ribs (Administrative Record ("A.R.") 37-41, 164-65, 188, 198, 202). Plaintiff's treating physicians believe that Plaintiff is unable to work (A.R. 268-69, 272, 716).

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 15-26, 31-61). Plaintiff testified to pain and limitations of allegedly disabling severity (A.R. 39-56). The ALJ found that Plaintiff has "severe" lumbar degenerative disc disease, obesity, rib fractures and sleep apnea, but retains the residual functional capacity for a limited range of light work. See A.R. 17, 19-25 (rejecting Plaintiff's allegations as "not entirely consistent with the medical evidence and other evidence in the record"). The ALJ deemed Plaintiff capable of performing work as a "cashier II," "information clerk" and "solderer," and, on that basis, denied disability benefits (A.R. 25-26 (adopting vocational expert testimony at A.R. 58-60)). The Appeals Council denied review (A.R. 1-3).

///
///
///

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

**DISCUSSION**

For the reasons discussed herein, the Court finds that the ALJ materially erred while assessing Plaintiff's credibility and the evidence from Plaintiff's treating physicians.

**I.   Summary of the Medical Record**

    **A.   Treatment**

The record contains treatment notes of Plaintiff's monthly visits with treating physician Dr. Charles T. Chen, and other providers within the Beaver Medical Group, from June of 2013 through December of 2014 (A.R. 398-540).

Plaintiff went to a nurse practitioner on June 24, 2013, complaining of worsening back pain with left leg and toe numbness (A.R. 499).  On examination, Plaintiff reportedly was obese, had tenderness in the left lumbar region, pain with toe maneuvers and flexion, and decreased sensation (A.R. 499-500).  Plaintiff was diagnosed with back pain and gastroesophageal reflux disease ("GERD") (A.R. 500).  Plaintiff was prescribed Tylenol with Codeine as needed for pain, scheduled for physical therapy, and given a note to be off work until the following Wednesday (A.R. 500-01).[1]

///

---

[1]   The record contains physical therapy treatment notes for "backaches" from June through August of 2013, and for vertigo from May through July of 2014 (A.R. 503-13, 538-40).

4

Plaintiff followed up with Dr. Chen on July 25, 2013, after Plaintiff had been to the emergency room the day before for dizziness and weakness (A.R. 491).[2] Plaintiff reported having had an MRI earlier that month which revealed L4-L5 central and left paracentral disc protrusion with mild to moderate central canal stenosis and moderate narrowing of the left neural foramen (A.R. 491; see also A.R. 274 (July, 2013 MRI study)). Plaintiff's lightheadedness and vertigo symptoms reportedly seemed to be improving (A.R. 491). Plaintiff complained of persistent lumbar pain and radicular pain not addressed by physical therapy, and also complained of a sensation of the room spinning (A.R. 491). On examination, Plaintiff reportedly had decreased range of motion in the lumbar spine, mildly unsteady gait and persistent burning pain down the left L4-L5 dermatome (A.R. 492). Dr. Chen diagnosed left lumbar radiculopathy, lumbar spinal stenosis, back pain, "dizziness and giddiness," type 2 diabetes mellitus, hypothyroidism, hyperlipidemia, tobacco abuse, GERD and leukocytosis (A.R. 492-95). Dr. Chen prescribed Gabapentin for nerve pain, continued Plaintiff's physical therapy, and requested authorization

///

///

---

[2] On July 19 and July 24, 2013, Plaintiff went to the emergency room at Redlands Community Hospital complaining of back pain and dizziness (A.R. 342, 354). Plaintiff reported that standing up and walking around improved his dizziness (A.R. 342). A CT scan of Plaintiff's brain reportedly was "negative," and he had no acute abnormalities reported on examination, apart from a "mild tachy" heart rate (A.R. 344, 352). Plaintiff initially was diagnosed with COPD and prescribed inhalers and Prednisone (A.R. 355, 360). When he returned, he was prescribed Meclizine for dizziness and Levofloxacin for possible bronchitis (A.R. 347, 353).

for an epidural injection at the L4-L5 area of the spine (A.R. 495-96).[3]

When Plaintiff returned on August 22, 2013, Plaintiff reported high blood sugars, no significant relief from his first epidural injection, occasional chest pain and chest pressure on exertion with associated shortness of breath, back pain and pain down his arms and legs (A.R. 478). On examination, Plaintiff reportedly was obese with slight tachycardia and decreased range of motion in the lumbar spine (A.R. 479-80). Dr. Chen added diagnoses of sinus tachycardia, chest pain (not otherwise specified), back pain, diabetes mellitus with circulatory manifestation and diabetic angiopathy (A.R. 480-81). Dr. Chen prescribed Metroprolol for Plaintiff's heart, increased Plaintiff's Gabapentin and Metformin, and ordered Plaintiff off work for one month (A.R. 482).

Plaintiff followed up with Dr. Chen on September 24, 2013, after an emergency room visit for chest pain the previous month (A.R. 472).[4] Plaintiff complained of lumbar pain and pain down his arms and legs,

---

[3] Plaintiff underwent lumbar epidural steroid injections in August and October of 2013, with no reported relief (A.R. 256-61). Plaintiff had complained of pain radiating over his lower back and left lower extremity down to his toes and numbness primarily when sitting (A.R. 257, 260).

[4] Plaintiff had gone to the Redlands Community Hospital on August 26, 2013, complaining of chest pain when getting out of bed, shortness of breath and coughing (A.R. 329-341). A chest x-ray reportedly showed "borderline" heart size, but no active disease (A.R. 338). A stress test reportedly showed no significant abnormalities (A.R. 340). Doctors ruled out myocardial ischemia and diagnosed chest pain after coughing (A.R. 339, 341).

and reportedly was ready for a second epidural injection (A.R. 472).
Examination results were unchanged from the prior visit (A.R. 473).
Dr. Chen added a diagnosis of hypertension (A.R. 473-75). Dr. Chen
prescribed Lisinopril for blood pressure, noted that Plaintiff should
follow up with the second epidural injection, and ordered Plaintiff
off work until October 28, 2013 (A.R. 475).

Plaintiff returned to Dr. Chen on October 24, 2013, after
Plaintiff had received a second epidural injection, and Plaintiff then
reported that the injection had not helped his back pain "at all"
(A.R. 467). Plaintiff complained of palpitations, back pain, muscle
aches, pain down his arms and legs, and stiffness (A.R. 467).
Plaintiff also reported that his blood sugar was still high and his
heart rate was faster when his blood sugar was high (A.R. 467).
Plaintiff said he wanted to have spine surgery, reporting persistent
pain radiating down the L4-L5 dermatome, left worse than right (A.R.
467). Examination results were unchanged from prior visits, except
for pain radiating down the L4-L5 dermatomes (A.R. 468). Dr. Chen
prescribed Nesina for diabetes, requested authorization for a spine
surgery consultation, and ordered Plaintiff off work for another month
(A.R. 470).[5]

_____

[5]    Orthopedic surgeon Dr. Gail Hopkins of Arrowhead
Orthopaedics evaluated Plaintiff for spine surgery on December 5,
2013 (A.R. 264-66). Plaintiff complained of pain radiating to
the legs with numbness, tingling and weakness for the past six
months, assertedly aggravated by prolonged sitting and standing
and alleviated by rest (A.R. 264). Plaintiff reportedly had been
treated with two epidural injections, physical therapy,
medication, and "work duty moderations" (A.R. 264). On
examination, Plaintiff reportedly had difficulty transferring
(continued...)

Plaintiff went to the Beaver Medical Group urgent care on November 18, 2013, reporting symptoms of dizziness for approximately the past month and pain in the left upper back below the shoulder blade (A.R. 460, 465-66). Plaintiff was taking ibuprofen (A.R. 460). On examination, Plaintiff reportedly had no tenderness to palpation of his back (A.R. 460). Plaintiff was given IV fluids and assessed with

---

[5](...continued)
from sitting to standing and from standing to the examination table (A.R. 264-65). The examination also evidenced a moderate paraspinal tenderness and a limited range of motion in the lumbar spine (A.R. 264-65). Dr. Hopkins diagnosed lumbar degenerative disc disease, with a note that Plaintiff had "failed conservative care" and the only other option was a combined anterior posterior fusion at L5-S1 (A.R. 266). Dr. Hopkins also encouraged Plaintiff to lose weight (A.R. 266).

Plaintiff returned to Dr. Hopkins on January 14, 2014, reporting no changes (A.R. 267). Plaintiff was taking ibuprofen for his pain (A.R. 267). Examination results were unchanged from the prior visit (A.R. 267-68). Dr. Hopkins deemed Plaintiff "temporarily totally disabled," and indicated that Plaintiff wanted to undergo the fusion surgery to control his back pain and return to a functional status that might permit work (A.R. 268-69). Dr. Hopkins authorized surgery (A.R. 269).

On March 6, 2014, Plaintiff saw Dr. John Steinmann, another doctor at Arrowhead Orthopaedics (A.R. 270). Dr. Steinmann's examination findings were the same as Dr. Hopkins' findings, except that Dr. Steinmann noted that Plaintiff had positive Gower's sign and did not have reported areas of tenderness to palpation of the back (A.R. 271-72). X-rays of Plaintiff's lumbar spine reportedly showed slight wedging at L1 (A.R. 272). Dr. Steinmann diagnosed low back pain emanating from L4-L5 and recommended surgery for Plaintiff's "severe mechanical low back pain" with "single segment abnormalities or at most two-level motion on MRI scan" (A.R. 272). According to Dr. Steinmann, Plaintiff must either accept "a permanent weakness to his back or [rectify it] through a stabilization procedure" (A.R. 272). Dr. Steinmann opined that Plaintiff was medically suitable for the planned surgery (A.R. 272). Dr. Steinmann also opined that Plaintiff's condition "significantly interferes with his activities of daily living and he is unable to perform his occupational duties" (A.R. 272).

dizziness, mild tachycardia, tobacco dependence, obesity and back pain (A.R. 460).

Plaintiff followed up with Dr. Chen on December 4, 2013, after a hospital visit for left-sided rib pain (A.R. 452).[6] Plaintiff complained of chest pain/discomfort (A.R. 452). On examination, Plaintiff reportedly was in moderate pain and distress (A.R. 453). Dr. Chen added a diagnosis of left-sided rib pain, prescribed a lidocaine patch, and ordered Plaintiff off work for another month (A.R. 453-56).

Plaintiff went to urgent care on December 30, 2013, with complaints of dizziness, extreme fatigue and right hand numbness (A.R. 445-47). He was referred to the San Gorgonio Emergency Department for evaluation, where he presented the same day complaining of tingling in his right hand, dizziness, vertigo, tachycardia, chest pain and chronic low back pain (A.R. 378-80, 445). A chest x-ray reportedly showed "questionable" vascular congestion (A.R. 392). Plaintiff was diagnosed with benign positional vertigo, hand paraesthesias and chest pain of uncertain cause, and was ordered to follow up with Dr. Chen (A.R. 379, 384).

///

///

---

[6]     Plaintiff had been to the Redlands Community Hospital emergency room on December 1, 2013, complaining of rib pain after he sneezed and heard a "pop" (A.R. 321-26). Plaintiff was diagnosed with low rib/cartilage separation, tobacco abuse and chronic cough, prescribed ibuprofen for pain and Ativan for pain and sleep (A.R. 325).

Plaintiff followed up with Dr. Chen on January 15, 2014 (A.R. 438). Plaintiff reportedly could not stand for more than 15 minutes without back pain (A.R. 438). On examination, Plaintiff reportedly was obese, in mild pain and distress, with slight tachycardia, decreased range of motion in the lumbar spine and burning pain radiating down the L4-L5 dermatomes (A.R. 439-40). Dr. Chen continued Plaintiff's lidocaine patch, ordered Plaintiff to follow up with Dr. Hopkins for surgery, and extended Plaintiff's disability for three additional months (A.R. 442).

Plaintiff presented to a nurse practitioner on February 5, 2014, with complaints of dizzy spells for the previous six months, causing unsteadiness and problems with walking (A.R. 434). On examination, Plaintiff reportedly had an unsteady gait, sinus tachycardia and obesity (A.R. 434-35). Plaintiff was sent to the emergency room at Redlands Community Hospital, where he complained of chest heaviness and dizzy spells (A.R. 304, 435). On examination, Plaintiff reportedly had mild dyspnea, tachycardia and a normal gait (A.R. 307-08). Apparently, a chest x-ray was normal, an EKG showed tachycardia, and an angiogram showed no evidence of pulmonary embolism (A.R. 311). Plaintiff was sent home and ordered to follow up with Dr. Chen for referral to a cardiologist, an ear nose and throat specialist and a neurologist for his ongoing tachycardia and dizziness (A.R. 312).

Plaintiff followed up with Dr. Chen on February 27, 2014, after Plaintiff had been hospitalized for fractured ribs (A.R. 426). Plaintiff reportedly had been diagnosed with chest pain, fractures of the left 8th and 9th ribs, pneumonia, diabetes mellitus type 2,

hypertension, tachycardia, obesity, tobacco dependence, hyperlipidemia
and chronic mild leukocytosis (probably secondary to tobacco use)
(A.R. 426; see also A.R. 284-303 (records from Redlands Community
Hospital admission from February 17-20, 2014, for pneumonia with left-
side rib fractures from coughing)).  Plaintiff complained of worsening
vertigo for the past six months for which Meclizine had provided
"little resolution" (A.R. 427).  Plaintiff reportedly had quit smoking
while he was in the hospital (A.R. 427).  Plaintiff complained of back
pain at a level of 5-6 out of 10 (A.R. 428).  On examination,
Plaintiff reportedly was obese with a "slightly tachy" heart rate,
tenderness to palpation of the left 8th and 9th ribs, and decreased
range of motion in the lumbar spine (A.R. 428-29).  A chest x-ray
reportedly showed low lung volumes (A.R. 433).  Dr. Chen added
diagnoses for a closed fracture of two ribs, a history of tobacco use,
pneumonia and vertigo (A.R. 429-31).  Dr. Chen suggested follow up
with the cardiac lab for a Holter monitor and a stress echocardiogram
in three months, follow up with Dr. Hopkins for spine surgery and also
follow up with an ear nose and throat specialist for vertigo (A.R.
431-32).

     Plaintiff returned for his annual physical on March 12, 2014,
reporting symptoms of benign positional vertigo (A.R. 418).  On
examination, Plaintiff reportedly had tenderness to palpation of his
left ribs, a "slightly tachy" heart rate, obesity, decreased range of
motion in the lumbar spine, mild nystagmus and a positive Baranay test
(A.R. 419-20).  Dr. Chen prescribed Triamterene-HCTZ for Plaintiff's
vertigo, and again suggested Plaintiff follow up with specialists
(A.R. 424).

Plaintiff returned on May 13, 2014, for stress echocardiogram and Holter monitor results, which reportedly were "fairly unremarkable" (A.R. 408).[7]  Plaintiff reportedly was receiving vestibular rehabilitation as recommended by Dr. Cannon (A.R. 408).[8]

Plaintiff went to urgent care on August 3, 2014, complaining of fatigue and a history of chronic back pain, and reporting difficulty getting out of bed or doing anything (A.R. 536).  The doctor suspected that Plaintiff's Metoprolol dose might be causing some fatigue and possible depression, and ordered Plaintiff to taper down his dosage and to follow up with Dr. Chen (A.R. 536).

Plaintiff followed up with Dr. Chen on August 18, 2014, reporting that he had been taking more naps mid-day and falling asleep during

_____

[7]     Plaintiff had consulted with otolaryngologist Dr. Stephen Cannon on April 14, 2014, for vertigo and disequilibrium (A.R. 415).  A carotid ultrasound reportedly was normal (A.R. 416).  A carotid x-ray revealed "somewhat irregular heartbeat" (A.R. 417).  Dr. Cannon referred Plaintiff for "vestibular rehab" (A.R. 415).

Plaintiff also consulted with cardiologist Dr. Thomas Makowski on April 24, 2014, for chest pain (A.R. 414).  Testing showed rare premature ventricular contractions with one ventricular couplet, and complaints of pain with some sinus tachycardia but no "significant ST depression" (A.R. 414).

[8]     There are physical rehabilitation treatment notes for Plaintiff's vertigo, motion sensitivity and lack of coordination (A.R. 402-06).  Plaintiff reportedly complained of imbalance, lightheadedness and dizziness, as well as significant back pain with numbness and tingling radiating to the left lower extremity (A.R. 402).  Plaintiff reportedly was waiting for his symptoms to decrease so he could exercise and lose weight before lumbar spine surgery (A.R. 402).  Plaintiff apparently ambulated without an assistive device but was limited in his ambulation secondary to back pain (A.R. 402).

the day despite sleeping a full eight-hour night (A.R. 526).  Dr. Chen

added diagnoses of fatigue/malaise and snoring, and referred Plaintiff

for a sleep study (A.R. 526, 528-30).[9]


Plaintiff returned on December 3, 2014, complaining of left-sided

rib pain (A.R. 519).  Plaintiff reportedly had a CPAP titration study

scheduled (A.R. 519).  Dr. Chen counseled Plaintiff on the importance

of weight loss and treatment for apnea (A.R. 519).  Plaintiff

reportedly had been trying to lose weight so he could have spine

surgery (A.R. 519).  Dr. Chen added diagnoses of obstructive sleep

apnea and Vitamin B12 deficiency, and referred Plaintiff for follow up

regarding his sleep apnea (A.R. 522).


It appears that, beginning on March 4, 2015, Plaintiff sought

weekly treatments with Dr. Pranav Mehta (A.R. 687).  Dr. Mehta's

treatment notes are not as detailed as those of some of the other

providers.  See A.R. 687-704, 716, 719-39.  Plaintiff reportedly had

tachycardia (A.R. 687).  Plaintiff returned on March 12, 2015, for

follow up testing (A.R. 689-90).  Plaintiff returned on March 19,

2015, for a blood pressure check, reporting tachycardia but no

symptoms of chest pain or dizziness (A.R. 691).  He was assessed with

active tachycardia (A.R. 691).  Plaintiff returned on April 10, 2015,

---

[9]     On October 9, 2014, Plaintiff submitted to a sleep
study at the Redlands Sleep Center, which showed severe
obstructive sleep apnea/hypopnea syndrome (A.R. 543-81).
Plaintiff was advised to try a CPAP, lose weight, and exercise
caution when using alcohol or sedatives and when driving (A.R.
543).  In a Patient Medical History form, Plaintiff reported,
inter alia, taking two to three naps per day for thirty minutes
to an hour each and staying in bed most of the time due to back
pain and dizziness (A.R. 553-55).

for another blood pressure check, reporting that he had been suffering

sharp chest pain, with shortness of breath and sweating the previous

few days, and that his back pain was not controlled with Motrin (A.R.

692). Dr. Mehta sent Plaintiff to the emergency room (A.R. 692).[10]

Plaintiff followed up with Dr. Mehta on April 29, 2015, reporting

continuing difficulty catching his breath, lots of stress and anxiety,

and shortness of breath when he wakes up (A.R. 696). Dr. Mehta

_____

[10] Plaintiff went to the Redlands Community Hospital
emergency room on April 10, 2015, complaining of chest pain (A.R.
604). On examination, there were no reported abnormalities (A.R.
606-07). A stress test reportedly was "negative" (A.R. 615,
622). A chest radiograph reportedly showed minimal left basilar
linear atelectasis or scarring and no other acute cardiopulmonary
abnormality (A.R. 621). Doctors ruled out myocardial infarction
and diagnosed obesity, hypertension, GERD, type 2 diabetes and
"poor conditioning" (A.R. 622-23).

Plaintiff returned to the emergency room on April 21, 2015,
complaining of chest pain, sweating profusely, feeling nauseated
and feeling like he would pass out even though he was lying down
(A.R. 624). There were no noted abnormalities on examination
(A.R. 626-27). An EKG reportedly showed mild sinus tachycardia
(A.R. 628-29). Plaintiff was advised to follow up with his
primary care physician (A.R. 629).

Plaintiff followed up with Dr. Mehta on April 23, 2015, who
recommended that Plaintiff go to Loma Linda University Health
System for a second opinion and for an arteriogram to look for
blockage (A.R. 635-85, 695). There, Plaintiff complained of
intermittent chest pain for two weeks, and dizziness, shortness
of breath, dyspnea, and light headedness (A.R. 635, 637, 641).
No abnormal findings were reported on examination (A.R. 638,
643). However, an EKG reportedly was "abnormal" and showed T
wave abnormality with a note to consider anterior ischemia (A.R.
638). A chest x-ray reportedly showed increased interstitial
markings in the lungs most likely consistent with bronchitis or
COPD (A.R. 639, 644). After a series of additional tests,
Plaintiff was discharged with a diagnosis of chest pain and
instructions to follow up with his primary care doctor and with a
cardiologist within a week (A.R. 652-53).

indicated that Plaintiff's dyspnea may be a component of anxiety, prescribed Ativan, and referred Plaintiff for pulmonary evaluation (A.R. 696).[11]

On May 21, 2015, Plaintiff returned, reporting that he was dieting better and losing weight (A.R. 697). According to a July 23, 2015 treatment record, triglycerides were high, vitamin D level was normal, and diabetes was controlled by Glucophage and diet (A.R. 719). Plaintiff reportedly was taking Norco for pain (A.R. 719). Plaintiff returned on August 7, 2015, for a blood pressure check and "paper work" (A.R. 720; see also A.R. 716 (letter from Dr. Mehta concerning Plaintiff's limitations)). Plaintiff returned on December 3, 2015, and began taking Tricor for his hyperlipidemia (A.R. 721). Plaintiff returned on February 3, 2016, and his Tricor was continued (A.R. 722-23).[12]

Plaintiff followed up with Dr. Mehta on June 23, 2016, reporting that he had cut down on his Lopressor and was having major heart palpitations but no chest pain, dizziness or dyspnea (A.R. 724-25). Plaintiff returned on September 19, 2016, saying he had been coughing

---

[11]    Plaintiff had a lung evaluation in June and July of 2015 (A.R. 594-602). Plaintiff was assessed with COPD and a cough (likely chronic bronchitis) (A.R. 602).

[12]    On February 25, 2016, Plaintiff went to the San Gorgonio Memorial Hospital emergency room complaining of left rib pain after he coughed and felt a pop in his left rib (A.R. 706, 712). X-rays showed minimal congestion and an old fracture – no new fractures were seen (A.R. 708, 712, 714-15). Plaintiff was diagnosed with a chest wall contusion fracture (rib), prescribed Zithromax and discharged with instructions to follow up with his primary doctor (A.R. 710-13).

for three weeks (A.R. 726-27).  He was encouraged to use his CPAP, his
Lopressor was increased, and he was prescribed a steroid
bronchiodilator (A.R. 726-28).  Plaintiff returned on October 21, 2016
(A.R. 729).  According to the record from this visit, Plaintiff's
triglycerides were over 600 because Plaintiff had stopped his Tricor,
Plaintiff's diabetes was uncontrolled, and his neuropathy had worsened
(A.R. 729, 737).  Dr. Mehta prescribed a different diabetes medication
(A.R. 729).

### B. __Additional Medical Opinion Evidence__

In a letter dated August 7, 2015, Dr. Mehta stated that Plaintiff
suffers "debilitating" conditions (_i.e._, severe back pain and
"[e]pisodes of dizziness that make him unable to work") (A.R. 716).
Dr. Mehta further stated:

> [Plaintiff] has seen many specialists at Arrowhead
> Orthopedics for his back pain.  Epidural injections have not
> helped.  Surgical options carry very high risk.  Now he is
> on narcotic medications.  Medications also make him feel
> groggy and he cannot drive on that medication.  His
> dizziness has been severe at times.  He has seen ENT
> specialists and ended up in [the] emergency room on several
> occasions.  At present he is being sent to Loma Linda
> University Hospital ENT department for re evaluation of his
> dizziness.  ¶  Mark Bunker is a person who wants to work but
> [is] limited by his current medical conditions.  In my
> opinion he is disabled and cannot hold a job.  If you have

any questions feel free to call me.

(A.R. 716).

Consultative examiner Dr. Vicente Bernabe prepared an "Orthopedic Consultation" dated March 9, 2015 (A.R. 585-90). Plaintiff complained of lower back pain since May of 2013, described as "sharp, throbbing pain" exacerbated by prolonged sitting, standing, walking, bending and lifting (A.R. 585). Dr. Bernabe reviewed Plaintiff's lumbar spine MRI (A.R. 585). Plaintiff had undergone physical therapy and epidural steroid injections and then was taking Hydrocodone and ibuprofen for his pain (A.R. 586). On examination, Dr. Bernabe noted no abnormal findings apart from tenderness to palpation of the lumbosacral junction and limited range of motion in the lumbar spine (A.R. 586-89). Dr. Bernabe diagnosed degenerative disc disease of the lumbar spine and lumbar musculoligamentous strain, and opined that Plaintiff can perform medium work (A.R. 589).

A state agency physician reviewed the record as of July of 2014, and found Plaintiff can perform light work with: (1) frequent balancing; (2) occasional climbing of ramps or stairs, stooping, kneeling, crouching and crawling; and (3) no climbing of ladders, ropes or scaffolds, and no exposure to hazards (A.R. 62-71). On reconsideration in March of 2015, another state agency physician reviewed the record, including Dr. Bernabe's opinion, and found the same residual functional capacity for light work, except that this physician also limited Plaintiff to occasional balancing and avoiding concentrated exposure to extreme heat, extreme cold and vibration

(A.R. 73-82).

## II.  Summary of Plaintiff's Subjective Statements and Testimony

Plaintiff testified that he stopped working in June of 2013 due to back pain (A.R. 37-39).  Plaintiff testified that he has constant lower back pain which radiates down both legs to his ankles, worse on his left side than his right, for which he lies down and stretches out to feel better (A.R. 41, 48-49, 55).  He said he had been told that spine fusion surgery would pose a very high risk and would not rid him of the pain entirely (A.R. 41, 49-50).  Plaintiff said he previously had tried physical therapy and two epidural injections with no relief, and currently was relying on pain pills (Hydrocodone) and ibuprofen (A.R. 41, 45-46, 51).  Plaintiff said the Hydrocodone causes dizziness and lightheadedness, so he tries not to take it too often and instead lies in bed "constantly" (A.R. 45).  Plaintiff testified that he has difficulty walking because he experiences pain with every step, and that, if he stands for 10 to 15 minutes, his leg will go numb (A.R. 41-42, 51).  Plaintiff also said that, if he sits for more than 15 or 20 minutes, his back starts hurting from the weight pushing down on his spine (A.R. 42, 54).  Plaintiff testified to breathing problems for which he uses two inhalers daily (A.R. 42).  Plaintiff claimed he cannot sleep more than two hours at a time due to pain (A.R. 46).

Plaintiff testified that he spends most of his time lying in bed (A.R. 42, 52).  He said he will get up and try to do chores like washing dishes, sweeping, or making something to eat, which he does in five-minute increments before lying back down (A.R. 42-44).  Plaintiff

estimated that he has stayed in bed an average of 21 hours a day since 2013 (A.R. 53). Plaintiff also said he does not do much outside the house except attend family holiday get togethers (A.R. 44, 46). Plaintiff also drives his son to work once or twice a week, a distance of approximately a mile and a half (A.R. 37). The only other activity Plaintiff reported was using his cell phone to talk to friends, play games and go on Facebook (A.R. 45).

Plaintiff testified he cannot work a normal eight-hour workday because he has to lie down and stretch out his back to ease his pain after sitting or standing (A.R. 54). Plaintiff was sweating at the hearing, and said he was experiencing pain and dizziness (A.R. 53-54).[13]

III. **The ALJ Erred in Discounting Plaintiff's Testimony and Statements Regarding the Severity of Plaintiff's Symptoms Without Stating Legally Sufficient Reasons for Doing So.**

Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834

---

[13] In an Exertion Questionnaire dated January 21, 2015, Plaintiff reported similar problems and limitations. See A.R. 227-30; see also A.R. 93-94 (letter dated September 9, 2014, reporting similar issues and limitations); A.R. 215-16 (similar "Remarks" dated October 1, 2014).

(9th Cir. 1995); <u>but see</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[14]  Generalized, conclusory findings do not suffice.  <u>See</u> <u>Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen v. Chater</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); <u>see also</u> Social Security Ruling 16-3p

/// 

/// 

/// 

/// 

/// 

---

[14]    In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  <u>See, e.g.</u>, <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 488-89 (9th Cir. 2015); <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1136-37 (9th Cir. 2014); <u>Treichler v. Commissioner</u>, 775 F.3d 1090, 1102 (9th Cir. 2014); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); <u>see also</u> <u>Ballard v. Apfel</u>, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are insufficient under either standard, so the distinction between the two standards (if any) is academic.

(eff. March 28, 2016).[15]

The ALJ discounted Plaintiff's testimony and statements as "not entirely consistent with the medical evidence and other evidence in the record" (A.R. 19-21). The ALJ stated that: (1) Plaintiff "has engaged in somewhat normal level activities" which "undermine the claimant's allegations of disabling functional limitations"; and (2) the medical evidence of record assertedly did not support Plaintiff's allegations because Plaintiff was "receiving routine and conservative treatment," and Plaintiff's allegations "were dramatized in comparison to the available objective evidence of record," which included findings that Plaintiff was able to walk without difficulty, had 5/5 strength, reported no back tenderness on some examinations, and had "multiple stable examinations" (A.R. 20-21, 23-24). As discussed below, these stated reasons for rejecting Plaintiff's subjective allegations are factually and legally infirm.

With regard to the first stated reason, inconsistencies between admitted activities and claimed incapacity properly may impugn the accuracy of a claimant's testimony and statements under certain circumstances. See, e.g., Thune v. Astrue, 499 Fed. App'x 701, 703 (9th Cir. 2012) (ALJ properly discredited pain allegations as

---

[15] Social Security Rulings ("SSRs") are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). SSR 16-3p superseded SSR 96-7p, but may have "implemented a change in diction rather than substance." R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

contradicting claimant's testimony that she gardened, cleaned, cooked, and ran errands); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" provided sufficient explanation for discounting claimant's testimony).  Yet, it is difficult to reconcile Ninth Circuit opinions discussing when a claimant's admitted activities may and may not justify a discounting of the claimant's testimony and statements.  Compare Stubbs-Danielson v. Astrue with Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); see also Diedrich v. Berryhill, 874 F.3d 634, 642-43 (9th Cir. 2017) (daily activities of cooking, cleaning, vacuuming, washing dishes, shopping and cleaning a cat's litter box insufficient to discount the claimant's subjective complaints).

Contrary to the ALJ's stated findings in the present case, Plaintiff's admitted activities of lying in bed, doing chores in five-minute increments before lying back down, using his cell phone, and driving a mile and a half once or twice a week are not "somewhat normal level activities" and cannot properly undermine Plaintiff's subjective complaints.  See Revels v. Berryhill, 874 F.3d 648, 667-68 (9th Cir. 2017) (ALJ erred in finding disparity between claimant's reported activities and symptom testimony where the claimant indicated she could use the bathroom, brush her teeth, wash her face, take her children to school, wash dishes, do laundry, sweep, mop, vacuum, go to

doctor's appointments, visit her mother and father, cook, shop, get gas, and feed her dogs; ALJ failed to acknowledge the claimant's explanation, consistent with her symptom testimony, that she could complete only some tasks in a single day and regularly needed to take breaks). There is no material inconsistency between Plaintiff's admitted activities and Plaintiff's claimed incapacity.

With regard to the ALJ's second stated reason, a lack of objective medical evidence can be a factor in discounting a claimant's subjective complaints, but cannot "form the sole basis." See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (same); see also Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"). Further, where there is an alleged inconsistency between the medical evidence and a claimant's subjective complaints, the ALJ must make a specific finding identifying the testimony the ALJ found not credible and linking the rejected testimony to parts of the medical record supporting the ALJ's non-credibility determination. See Brown-Hunter v. Colvin, 806 F.3d at 494 (holding it was legal error for ALJ to fail to make such a link) (citations omitted).

Here, the ALJ characterized Plaintiff's allegations as "dramatized" in comparison to the available medical record, observing that Plaintiff alleged that he needed to lie in bed 21 out of 24 hours a day and made allegations of pain, but he was "documented as being capable of walking without difficulty and some examination showed no

back tenderness[,] . . . he had 5/5 strength in his physical examinations[, and] [h]e had multiple stable examinations" (A.R. 23, 24).  These isolated findings do not accurately capture the tenor of the medical record as a whole and, in any event, the findings are not inconsistent with Plaintiff's claimed disabling need for extensive bed rest.  The findings are not a legally sufficient reason to discount Plaintiff's subjective complaints.  See, e.g., Imperatrice v. Commissioner, 2017 WL 1178042, at *7 (D. Ariz. Mar. 30, 2017) (ALJ's citation to isolated examples of noncompliance which did not "capture the record as a whole" was not a sufficiently clear, convincing basis to discount a claimant's testimony); Griglione v. Colvin, 2013 WL 5840366, at *5 (C.D. Cal. Oct. 30, 2013) (ALJ's references to isolated instances in the record did not constitute substantial evidence to support adverse credibility finding based on alleged symptom exaggeration, where the record as a whole showed that the claimant sought regular treatment for neck and back pain, and there was no other mention of symptom exaggeration in the treatment record); see generally Garrison v. Colvin, 759 F.3d at 1017 ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.  Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working.") (citing Holohan v. Massanari, 246 F.3d at 1205).

The ALJ also cited Plaintiff's allegedly "routine and conservative treatment" (A.R. 21).  A limited course of treatment sometimes can justify the rejection of a claimant's testimony, at

least where the testimony concerns physical problems.  See, e.g.,
Burch v. Barnhart, 400 F.3d at 681 (lack of consistent treatment, such
as where there was a three to four month gap in treatment, properly
considered in discrediting claimant's back pain testimony); Meanel v.
Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the
credibility of a claimant's pain testimony, the Administration
properly may consider the claimant's failure to request treatment and
failure to follow treatment advice) (citing Bunnell v. Sullivan, 947
F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d
678, 679-80 (9th Cir. 1993) (permissible credibility factors in
assessing pain testimony include limited treatment and minimal use of
medications); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th
Cir. 1995) (absence of treatment for back pain during half of the
alleged disability period, and evidence of only "conservative
treatment" when the claimant finally sought treatment, sufficient to
discount claimant's testimony).

   In the present case, however, it is highly doubtful Plaintiff's
treatment accurately may be characterized as "routine and
conservative."  As detailed above, the record shows that Plaintiff
frequently sought treatment from several providers throughout the
alleged disability period, followed up as ordered and complied with
all non-surgical treatment suggestions, including physical therapy,
narcotic pain medication, and multiple epidural injections.  All the
while, Plaintiff reported that the treatment had not significantly
alleviated his back pain.  Plaintiff's recommended treatment does not
appear to have been "routine" or "conservative."  See, e.g., Childress
v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t

is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to categorize as "conservative" treatment including use of narcotic pain medication and epidural injections); see also Sanchez v. Colvin, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("Surgery is not conservative treatment").

## IV.  The ALJ Erred in Evaluating the Medical Evidence.

Dr. Chen and his staff ordered Plaintiff to remain off work from Plaintiff's initial visit in June of 2013 through at least April of 2014, due to Plaintiff's back pain (A.R. 442, 455, 470, 475, 482, 500).  In January of 2014, Dr. Hopkins deemed Plaintiff "temporarily totally disabled" and in need of spine fusion surgery to return to a functional level that might permit work (A.R. 268-69).  Dr. Steinmann similarly opined in March of 2014 that, without surgery, Plaintiff's condition is a "permanent weakness to his back" that renders him "unable to perform his occupational duties" (A.R. 272).  Dr. Mehta opined in August of 2015 that Plaintiff cannot work (A.R. 716).[16] Although none of these physicians specified particular work-related

---

[16]     Contrary to Defendant's apparent construction, the Court does not construe Plaintiff's Motion to acquiesce in the ALJ's rejection of Dr. Mehta's opinion.  See Plaintiff's Motion at 4.

limitations, it is evident that all of these physicians believe that
Plaintiff presently lacks the physical capacity to work.

A treating physician's conclusions "must be given substantial
weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see
Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must
give sufficient weight to the subjective aspects of a doctor's
opinion. . . . This is especially true when the opinion is that of a
treating physician") (citation omitted); see also Garrison v. Colvin,
759 F.3d at 1012 (discussing deference owed to the opinions of
treating and examining physicians). Even where the treating
physician's opinions are contradicted, as here, "if the ALJ wishes to
disregard the opinion[s] of the treating physician he . . . must make
findings setting forth specific, legitimate reasons for doing so that
are based on substantial evidence in the record." Winans v. Bowen,
853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets
omitted); see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may
disregard the treating physician's opinion, but only by setting forth
specific, legitimate reasons for doing so, and this decision must
itself be based on substantial evidence") (citation and quotations
omitted). Here, the ALJ's reasoning is insufficient.

First, the ALJ considered and rejected Dr. Hopkins' opinion as
"not relevant" because the opinion allegedly was rendered "in the
context of a workers' compensation case" (A.R. 23). Actually, the
record does not reveal whether Dr. Hopkins' opinion was rendered in
the context of a workers' compensation case, although the term in the
opinion "temporarily totally disabled" is often used in workers'

compensation law.  In any event, the purpose for which a medical opinion is obtained "does not provide a legitimate basis for rejecting it."  <u>Reddick v. Chater</u>, 157 F.3d 715, 726 (9th Cir. 1998); <u>see</u> <u>Nash v. Colvin</u>, 2016 WL 67677, at *7 (E.D. Cal. Jan. 5, 2016) ("the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . .") (citations and quotations omitted); <u>Casillas v. Colvin</u>, 2015 WL 6553414, at *3 (C.D. Cal. Oct. 29, 2015) (same); <u>Franco v. Astrue</u>, 2012 WL 3638609, at *10 (C.D. Cal. Aug. 23, 2012) (same); <u>Booth v. Barnhart</u>, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) (same).  By finding Dr. Hopkins' opinion "not relevant," the ALJ erred.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Brammer v. Colvin</u>, 2015 WL 9484450, at *5 (C.D. Cal. Dec. 29, 2015) ("Although workers' compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless evaluate medical opinions stated in workers' compensation terminology just as he would evaluate any other medical opinion.").

Second, the ALJ did not mention Dr. Steinmann.  It is error to fail to mention a treating physician who opined that the claimant cannot work.  <u>See, e.g.</u>, <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1038 n.10 (2007).

Third, the ALJ gave "little weight" to Dr. Mehta's opinion, as "not consistent with the entire evidence of record including Dr. Mehta's own treatment notes" (A.R. 23).  According to the ALJ, Dr. Mehta's treatment notes reflect only "routine and conservative treatment" (A.R. 23).  As support for this conclusion, the ALJ referenced Plaintiff's treatment for fractured ribs, diabetes and

chest pain (A.R. 23). These references are largely beside the point. Dr. Mehta's letter states that Plaintiff's debilitating conditions are "severe back pain" and dizziness, not fractured ribs, diabetes or chest pain (A.R. 716). Additionally, as discussed above, Plaintiff's treatment for his back pain does not appear to have been "routine" or "conservative."

An ALJ properly may discount a treating physician's opinions that are in conflict with treatment records or are unsupported by objective clinical findings. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and clinical notes justifies rejection of assessment); Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("Connett") (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly may reject treating physician's opinions that "were so extreme as to be implausible and were not supported by any findings made by any doctor . . ."); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings as well as the opinion's consistency with the record as a whole). However, the ALJ's stated perception of an inconsistency between Dr. Mehta's opinion and the medical record lacks substantial supporting

evidence.

No doctor discerned any specific inconsistency between Dr. Mehta's opinion and the "evidence of record." Drs. Hopkins and Steinmann both opined that Plaintiff cannot work without surgery (A.R. 269, 272). Dr. Bernabe and the state agency physicians reviewed the record prior to the time that Dr. Mehta provided an opinion.[17] The ALJ's purported lay discernment of some alleged inconsistency between Dr. Mehta's opinion and Dr. Mehta's treatment notes or other parts of the medical record cannot constitute substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record).

The ALJ also cited Plaintiff's assertedly "dramatized" subjective complaints as a basis for discounting Dr. Mehta's opinion (A.R. 23).

_____

[17]     The Court also observes that Dr. Bernabe and the state agency physicians never indicated they even considered the opinion of Dr. Steinmann. See A.R. 66-67 (state agency physician on initial review noting Dr. Hopkins' "temporarily totally disabled" finding, but elsewhere stating, "There is no indication that there is medical or other opinion evidence"); A.R. 80 (state agency physician on reconsideration referenced only Dr. Bernabe's opinion evidence); A.R. 585-90 (Dr. Bernabe noting that he reviewed Plaintiff's lumbar spine MRI, but making no mention of having reviewed any other medical records).

An ALJ may reject a treating physician's opinion that is predicated on the properly discounted subjective complaints of the claimant.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); accord Mattox v. Commissioner, 371 Fed. App'x 740, 742 (9th Cir. 2010); Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989); but see Ghanim v. Colvin, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (holding that "when a [treating physician's] opinion is not more heavily based on a patient's self-reports than on clinical observations," an ALJ may not discount the treating physician's opinion based on the patient's lack of credibility); accord Ryan v. Commissioner, 528 F.3d 1194, 1200 (9th Cir. 2008).  As discussed above, however, the ALJ did not properly discount Plaintiff's subjective complaints.  Additionally, it is not clear to what degree Dr. Mehta's opinion may have been based on Plaintiff's subjective complaints as distinguished from the clinical observations reflected in the record.  The ALJ's reasoning for rejecting Dr. Mehta's opinion is factually and legally insufficient.

**V.   The Court is Unable to Deem the Errors Harmless; Remand for Further Administrative Proceedings is Appropriate.**

     The Court is unable to conclude that the ALJ's errors were harmless.  "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted); see Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency"); cf. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir.

2011) (error not harmless where "the reviewing court can determine
from the 'circumstances of the case' that further administrative
review is needed to determine whether there was prejudice from the
error").

    Remand is appropriate because the circumstances of this case
suggest that further development of the record and further
administrative review could remedy the ALJ's errors.  See McLeod v.
Astrue, 640 F.3d at 888; see also INS v. Ventura, 537 U.S. 12, 16
(2002) (upon reversal of an administrative determination, the proper
course is remand for additional agency investigation or explanation,
except in rare circumstances); Leon v. Berryhill, 880 F.3d 1041, 1044
(9th Cir. 2017) (reversal with a directive for the immediate
calculation of benefits is a "rare and prophylactic exception to the
well-established ordinary remand rule"; Dominguez v. Colvin, 808 F.3d
403, 407 (9th Cir. 2015) ("Unless the district court concludes that
further administrative proceedings would serve no useful purpose, it
may not remand with a direction to provide benefits"); Treichler v.
Commissioner, 775 F.3d at 1101 n.5 (remand for further administrative
proceedings is the proper remedy "in all but the rarest cases");
Garrison v. Colvin, 759 F.3d at 1020 (court will credit-as-true
medical opinion evidence only where, inter alia, "the record has been
fully developed and further administrative proceedings would serve no
useful purpose"); Harman v. Apfel, 211 F.3d 1172, 1180-81 (9th Cir.),
cert. denied, 531 U.S. 1038 (2000) (remand for further proceedings
rather than for the immediate payment of benefits is appropriate where
there are "sufficient unanswered questions in the record"); Connett,
340 F.3d at 876 (remand is an option where the ALJ fails to state

sufficient reasons for rejecting a claimant's excess symptom
testimony); <u>but see</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 640 (9th Cir. 2007)
(citing <u>Connett</u> for the proposition that "[w]hen an ALJ's reasons for
rejecting the claimant's testimony are legally insufficient and it is
clear from the record that the ALJ would be required to determine the
claimant disabled if he had credited the claimant's testimony, we
remand for a calculation of benefits") (quotations omitted); <u>see also</u>
<u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 495-96 (9th Cir. 2015)
(discussing the narrow circumstances in which a court will order a
benefits calculation rather than further proceedings); <u>Ghanim v.</u>
<u>Colvin</u>, 763 F.3d at 1166 (remanding for further proceedings where the
ALJ failed to state sufficient reasons for deeming a claimant's
testimony not credible); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 600-01 (9th
Cir. 2009) (a court need not "credit as true" improperly rejected
claimant testimony where there are outstanding issues that must be
resolved before a proper disability determination can be made).  There
remain significant unanswered questions in the present record.[18]

///

///

///

///

///

///

_____

[18]  For example, it is not clear whether the ALJ would be
required to find Plaintiff disabled for the entire claimed period
of disability even if Plaintiff's testimony and the treating
physicians' opinions were fully credited.  <u>See</u> <u>Luna v. Astrue</u>,
623 F.3d 1032, 1035 (9th Cir. 2010).

33

**CONCLUSION**

For all of the foregoing reasons,[19] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 14, 2018.

/s/
_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[19] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.